IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| RUSSELL GAITHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 121-071 |
| | ) | |
| NATHAN DEAL, Commissioner; | ) | |
| MR. PHILBIN, Warden; | ) | |
| MRS. HARVEY, Deputy Warden; | ) | |
| MR. PASCAL, Deputy Warden; and | ) | |
| ROBBIE MILLER, Inmate, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Plaintiff, currently incarcerated at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. Because Plaintiff is proceeding IFP, his amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

## I.   SCREENING THE AMENDED COMPLAINT

### A.   BACKGROUND

Plaintiff names the following Defendants:  (1) Nathan Deal, Commissioner; (2) Mr. Philbin, ASMP Warden; (3) Mrs. Harvey, ASMP Deputy Warden; (4) Mr. Pascal, ASMP Deputy Warden; and (5) Robbie Miller, ASMP inmate.  (Doc. no. 15, pp. 1-5.)  Plaintiff sues the

Commissioner and ASMP prison officials in their official capacities.  (<u>Id.</u> at 2-4.)  Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On September 11, 2020, two unit managers at ASMP directed Plaintiff to pack his personal property to move to a new dormitory.  (<u>Id.</u> at 5.)  Shortly after packing his property, Plaintiff put the store items of another inmate in a sheet, and Defendant Miller tried to take  the sheet, resulting in a fight with Plaintiff that lasted approximately three minutes.  (<u>Id.</u>)  After Defendant Miller could not take the sheet, he returned and stabbed Plaintiff.  (<u>Id.</u>)  The unit manager took Plaintiff to the prison medical department, where he received stiches for his wounds.  (<u>Id.</u>)  Defendant Miller stabbed other inmates before attacking Plaintiff, and after the September 11th attack, prison officials put Defendant Miller in punitive segregation.  (<u>Id.</u> at 6.)  Two days after the stabbing, Plaintiff told Warden Philbin about the attack and Defendant Miller's prior attacks on other inmates.  (<u>Id.</u>)

On October 2 and 14, 2020, Plaintiff wrote letters to Warden Philbin complaining that Defendant Miller was in general population and having "run ins" with the other inmates and threatening Plaintiff, but the Warden never responded.  (<u>Id.</u>)  Plaintiff and Defendant Miller continued to be assigned to the same dormitory, and in November 2020, Plaintiff received a disciplinary report for refusing to stay in the dormitory with Defendant Miller.  (<u>Id.</u>)  Plaintiff "tried to talk to" Defendants Harvey and Paschal about his assignment to the same dormitory as Defendant Miller and the attendant restrictions on inmates in that dormitory regarding using the telephone and law library.  (<u>Id.</u> at 7.)  Plaintiff has continued to write letters to Defendants Philbin, Harvey, and Paschal about his housing situation and the continuing verbal threats from Defendant

Miller, but he has not received a response.  (Id.)  When Defendant Deal visited ASMP, Plaintiff told him he had been stabbed and that ASMP officials "let the assailant still run around."[1]  (Id. at 9.)

Plaintiff asserts he has been denied all medical treatment at ASMP since November 16, 2020, (id. at 7), but he also states he has received medication that is not working on his various conditions related to the stabbing that occurred on September 11th.  (Id. at 8.)  Plaintiff also acknowledges x-rays were taken in February of his puncture wounds, except for the wound on his scalp.  (Id.)  He also acknowledges treatment from a dermatologist, but unidentified officials at ASMP will not provide the medicine prescribed by the dermatologist.  (Id.)  Plaintiff does not identify the medicine he seeks, and the exhibits he references in his statement of claim are not attached to the amended complaint.[2]

As relief, Plaintiff seeks a declaration that Defendant Harvey and Paschal have violated his right of access to the courts by housing him in a dormitory with restricted access to a telephone and the law library.  (Id. at 9.)  He also seeks a declaration Defendants Philbin, Harvey, and Paschal violated his rights by failing to protect him from the September 11th stabbing and failing to provide appropriate medical care.  (Id. at 11.)    Additionally, Plaintiff seeks treatment "by an outside

---

[1]Plaintiff refers to the Commissioner of the Georgia Department of Corrections visiting ASMP in November 2020 and April 2021, and refers to him as Nathan Deal.  However, Timothy Ward is the Commissioner.  For purposes of the Court's analysis, the Court will assume Plaintiff's intends to name the Commissioner, not the former Governor of Georgia, Nathan Deal.

[2]In the directions for amending the complaint, Plaintiff was cautioned not to incorporate portions of any prior pleading and not to incorporate exhibits by reference as a means of providing the factual basis for his claims.  (See doc. no. 13, pp. 3-4.)  To the extent Plaintiff improperly attempts to rely on exhibits attached to the original complaint, (doc. no. 1-1), the Health Service request forms do not provide details on the medicine allegedly prescribed by the dermatologist, but they do confirm he is in fact receiving medical treatment.

doctor." (Id. at 9.)   Finally, Plaintiff seeks compensatory and punitive damages from each Defendant.  (Id.)

### B.   DISCUSSION

#### 1.  Legal Standard for Screening

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it

"tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557).  In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney.  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*).  However, this liberal construction does not mean that the Court has a duty to re-write the complaint.  Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2.  Plaintiff Does Not State a Claim Against Defendant Miller

Plaintiff names fellow inmate Robbie Miller as Defendant.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). Traditionally, acting under color of state law "requires that the defendant in a § 1983 action have exercised power possessed by the virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  Id. at 49 (internal quotation marks and citation omitted).  A private person is only viewed as acting under color of state law if "there is such a close nexus between the State and the challenged action that seemingly private behavior" may be fairly attributed to the State.  Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (internal quotations and citations omitted).  Plaintiff has failed to allege any such nexus, and thus, any federal claim against Defendant Miller must

be dismissed.  See Mosley v. Medlin, CV 313-086, 2014 WL 3110027, at *6 (S.D. Ga. July 7, 2014) (dismissing § 1983 claim against fellow inmate where no nexus alleged between State and challenged action); Thomas v. Thomas, CV507-77, 2008 WL 80305, at *1 (S.D. Ga. Jan. 7, 2008) (same).

To the extent Plaintiff seeks to require criminal charges be brought against Defendant Miller, it is well-settled that "a private citizen has no judicially cognizable interest in the prosecution or nonprosecution of another."  Otero v. United States Att'y Gen., 832 F.2d 141, 141 (11th Cir. 1987) (quoting Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973)); see also Capogrosso v. Supreme Ct. of N.J., 588 F.3d 180, 184 (3d Cir. 2009) ("[I]ndividual citizens do not have a constitutional right to the prosecution of alleged criminals."); Sattler v. Johnson, 857 F.2d 224, 227 (4th Cir. 1988) (holding that there is no constitutional right for a member of the public, as a victim, to have defendants, including state government officials, criminally prosecuted).  Indeed, the decision on whether to ultimately prosecute a criminal case would be a matter entirely in local prosecutor's discretion.  See, e.g., Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978) ("In our system . . . the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion.").  Accordingly, Plaintiff has no valid § 1983 claims against Defendant Miller.

### 3.  Plaintiff Does Not State a Failure to Protect Claim

Plaintiff also seeks to hold Defendants Philbin, Harvey, and Paschal liable for not protecting him from the September 11th stabbing by Defendant Miller.  A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted).  Accordingly,

a prison inmate has a constitutional right to be protected from violence and from physical assault by other inmates.  Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (*per curiam*); Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981).  When officials become aware of a threat to an inmate's health and safety, the Eighth Amendment imposes a duty to provide reasonable protection.  Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*).  However, "[t]his does not mean that the constitutional rights of inmates are violated every time a prisoner is injured.  It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials."  Gullatte, 654 F.2d at 1012.  "[T]here must be at least some allegation of a conscious or callous indifference to a prisoner's rights" that would raise the tort to the level of a constitutional violation in order to state a section 1983 cause of action against prison officials for cruel and unusual punishment.  Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982) (citations omitted).

"Although 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners,' not every instance of inmate on inmate violence 'translates into constitutional liability for prison officials responsible for the victim's safety.'"  Terry v. Bailey, 376 F. App'x 894, 895 (11th Cir. 2010) (*per curiam*) (citing Farmer, 511 U.S. at 833-34).  To establish an Eighth Amendment claim, a prisoner "must allege facts sufficient to show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted).  These three elements are evaluated in part by an objective standard and in part by a subjective standard.  See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014).

7

As the Eleventh Circuit explained,

> When examining the first element—a substantial risk of serious harm—the court uses an objective standard.  The second element—the defendant's deliberate indifference to that risk—has two components:  one subjective and one objective.  To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm.  To satisfy the objective component, a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Id. (internal citations and quotations omitted).

Mere negligent failure to protect and inmate from an attack does not justify § 1983 liability.  Brown, 894 F.2d at 1537.  Stated otherwise, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk.  Farmer, 511 U.S. at 835-39; see also Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (requiring a plaintiff to show "more than mere negligence," and stating that courts are to look for "obduracy and wantonness, not inadvertence or error in good faith.").

Plaintiff has not alleged any Defendant consciously disregarded a serious and imminent risk from Defendant Miller.  First, Plaintiff does not allege he informed any named Defendant about a problem with Defendant Miller until *after* the attack occurred.  Thus, Plaintiff has not alleged any Defendant knew about a substantial risk of serious harm to Plaintiff before the stabbing occurred.  Moreover, Plaintiff's after-the-fact reports of "run-inns" with Defendant Miller included verbal threats, but Plaintiff does not describe any further attack from Defendant Miller actually occurred.  To the extent Defendant Miller attacked other inmates, (doc. no. 15, p. 6), he does not allege any Defendant was made aware of those attacks,

8

and certainly does not allege any attack or threats were made toward him prior to the September 11th stabbing.

Second, the Eleventh Circuit has noted "the Eighth Amendment does not require the uninterrupted personal supervision of all inmates." Estate of Owens v. GEO Group, Inc., 660 F. App'x 763, 773 (*per curiam*) (11th Cir. 2016) (citing Purcell v. Toombs Cnty., 400 F.3d 1313, 1323 n.23 ("The Constitution does not require that every inmate in a jail be observed by a guard every twenty minutes."); Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 (11th Cir. 1995) (evidence that jailer failed to check on group cell during hour between last check and beating was not sufficient to show deliberate indifference).)  Thus, there is no claim to be had that Defendants are liable for the attack based on the supervision, or alleged lack thereof, in place at the time Defendant Miller stabbed Plaintiff.  In sum, Plaintiff's allegations fail to satisfy the subjective or objective component of a failure to protect claim.

### 4.  Plaintiff Does Not State a Medical Deliberate Indifference Claim

To state a claim for deliberate indifference to a serious medical need, Plaintiff must allege:  (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct.  Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (*per curiam*).

To satisfy the objective component regarding a serious medical need, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007) (quoting Hill v. Dekalb

9

Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).   To satisfy the subjective component that a defendant was deliberately indifferent to his serious medical need, Plaintiff must allege that person:  (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) disregarded that risk by (3) following a course of action which constituted "more than mere negligence."  Melton, 841 F.3d at 1223.

In addition, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).  The Eighth Amendment does not mandate that the medical care provided to the prisoner be "perfect, the best obtainable, or even very good."  Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)).  Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference.  Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris, 941 F.2d at 1505; see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (per curiam) (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim).  Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.  Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986).

Neither does a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989); Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010) (per curiam).  That

10

is, deliberate indifference cannot be shown simply by arguing that an inmate wanted a different type of treatment.  Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments. . . .").  "The question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment."  Butler v. Prison Health Servs., Inc., 294 F. App'x 497, 499 (11th Cir. 2008) (per curiam) (citing Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995)).

Here, although Plaintiff claims he has been "denied all prescribed medication," examination of the entirety of the claims shows Plaintiff is receiving some medication, but not the medication he claims was prescribed by a dermatologist.  Indeed, Plaintiff concedes he is receiving medical care, including x-rays and visits with a specialist, but he prefers treatment from an outside doctor.  Moreover, Plaintiff does not allege any of the named Defendants are actually responsible for providing his medical care.

Nowhere does Plaintiff allege any of the named Defendants, from the Commissioner to the Warden or Deputy Wardens, were present for, or participated in, Plaintiff's medical treatment.[3]  Nor does he allege any of them were responsible for examining Plaintiff or making any determination about the timing or type of treatment for Plaintiff.  Courts have recognized that supervisory prison officials who are not medical professionals are entitled to rely on the

---

[3]As discussed in Part I(B)(6), infra, Defendants cannot be held liable by virtue of their supervisory positions.

decisions of trained medical practitioners regarding care provided to inmates.  See Williams v. Limestone Cnty., Ala., 198 F. App'x 893, 897-98 (11th Cir. 2006) (*per curiam*); Rutledge v. Lift, CV 307-055, 2009 WL 2842739, at *8 (S.D. Ga. July 22, 2009) (citing Waldrop v. Evans, 681 F. Supp. 840, 848-49 (M.D. Ga. 1988)), *adopted by* 2009 WL 2900276 (S.D. Ga. Sept. 3, 2009) (Bowen, J.).

At best, Plaintiff has alleged a disagreement over the proper course of treatment.  But even if he had alleged deliberate indifference, Defendants are not responsible for the medical care about which he complains.  Thus, Plaintiff fails to state a claim for deliberate indifference based on his medical treatment at ASMP.

### 5.     Plaintiff Does Not State a Claim Based on Denial of Access to the Courts

To state a viable denial of access to the courts claim, a plaintiff must allege actual injury to existing or contemplated litigation or nonfrivolous (and therefore viable) claims challenging Plaintiff's sentence or conditions of confinement.  Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998); see also Lewis v. Casey, 518 U.S. 343, 349-55 (1996).  There must be evidence of deterrence of a nonfrivolous claim "such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials."  Wilson, 163 F.3d at 1290-91.  Stated otherwise, there must be an allegation that the actions of a defendant acting under the color of state law "hindered . . . 'efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights.'"  Id. at 1291 (citation omitted).

To show actual injury, a plaintiff must show he had a legitimate claim that jail officials restricted him from pursuing.  Al-Amin v. Smith, 511 F.3d 1317, 1333 (11th Cir. 2008). "[T]he very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." Christopher v. Harbury, 536 U.S. 403, 414-15 (2002).  Therefore, the complaint must contain allegations sufficient to give fair notice of what was allegedly lost and show "that the 'arguable' nature of the underlying claim is more than hope." Id. at 416.   Accordingly, "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." Id. at 415.

Here, Plaintiff fails to provide *any* detail about actual injury to existing or contemplated litigation or nonfrivolous (and therefore viable) claims.  Plaintiff does not identify any civil issue he has not been able to raise, and therefore has not pled any viable claims have been hindered.  Rather he states in conclusory fashion, that he cannot use the telephone or the law library in the same manner as the general population because of his current housing status. (Doc. no. 15, p. 7.)  Not only does he fail to identify any named Defendant as responsible for his housing assignment, but he does not identify any nonfrivolous claim that he has been prevented from raising, let alone that the actions of any named Defendant caused denial or dismissal of any such claim.  See Christopher, 536 U.S. at 417-18.  Indeed, as discussed in Part I(B)(8), Plaintiff's ability to file federal cases is significantly restricted by his accumulation of three strikes under 28 U.S.C. § 1915(g), a circumstance of his own actions having nothing to do with access to a telephone or the law library.  Therefore, the Court concludes Plaintiff fails to state a viable denial of access to the courts claim upon which relief can be granted.

13

**6.      Plaintiff Does Not State a Claim Based on Supervisory Liability**

Nor can Plaintiff hold Defendants Philbin, Harvey, and Paschal, or the Commissioner, liable simply by virtue of their supervisory positions.  "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."   Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) (*per curiam*).  Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*.  See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted).    Therefore, to hold these four Defendants liable, Plaintiff must demonstrate that they (1) actually participated in the alleged constitutional violation, or (2) there is a causal connection between the individual's actions and the alleged constitutional violation.  See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).  Here, Plaintiff appears to name these individuals as Defendants not because of their direct involvement in the events about which he complains, but by virtue of their supervisory positions.  Indeed, Plaintiff complains he informed all of these supervisors about problems *after* the challenged events occurred, but he has "received no response."  (See, e.g.,

14

doc. no. 15, pp. 6, 8 (describing no response to complaints about Defendant Miller after stabbing occurred or about disagreement with medical treatment).)

Nowhere does Plaintiff allege Defendants Philbin, Harvey, Paschal, or the Commissioner were present for, or participated in, the substantive events about which Plaintiff complains:  the September 11th stabbing or subsequent medical care and housing assignment. Nor can Plaintiff establish these supervisory Defendants or other individuals were directly involved with the events in question by alleging they ruled on a grievance or otherwise received after-the-fact notification of an alleged problem from Plaintiff.  See Asad v. Crosby, 158 F. App'x 166, 170-72 (11th Cir. 2005) (per curiam) (affirming district court's dismissal of supervisory liability claims against two defendants who failed, inter alia, "to afford [plaintiff] relief during the grievance process," because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"); see also Blackerby v. McNeil, No. CV 307-071, 2008 WL 2047814, at *1-2 (S.D. Ga. May 13, 2008) (dismissing claim against prison official who allegedly failed to act in accordance with the plaintiff's wishes concerning information in a grievance and a letter); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory officials who denied administrative grievances and otherwise failed to act based on allegations contained in the grievances), cert. denied, 530 U.S. 1264 (2000); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

Plaintiff also fails to allege the requisite causal connection between the supervisory Defendants and the asserted constitutional violations.  See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation).  The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'"  Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)).  The standard for demonstrating "widespread abuse" is high.  In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences."  Brown, 906 F.2d at 671 (emphasis added).  A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff does not draw the necessary causal connection to any alleged constitutional violation.  Plaintiff has not alleged (1) a history at ASMP of widespread abuse regarding maintaining security, improper medical treatment, or housing assignments interfering with court access, (2) an improper custom or policy put in place by any Defendant with respect to these issues, or (3) an inference any of these supervisory Defendants directed prison employees to act, or knew they would act, unlawfully.  At best, Plaintiff has alleged he used the grievance procedure or somehow provided after-the-fact-notification to the supervisors of a problem, and

16

his grievance and complaints were either denied or not investigated to his satisfaction.  However,

a prison grievance procedure does not provide a constitutionally protected interest.  See Bingham

v. Thomas, 654 F.3d 1171, 1177-78 (11th Cir. 2011).  Nor, as explained above, can supervisory

liability be imposed based on ruling on a grievance, and neither can liability be imposed for the

alleged underlying constitutional violation because an after-the-fact investigation was not

conducted to Plaintiff's satisfaction.

In sum, Plaintiff has not shown Defendants Philbin, Harvey, Paschal, or the

Commissioner actually participated in the alleged constitutional violations; nor has he drawn the

necessary causal connection to any alleged constitutional violation.  Therefore, Plaintiff fails to

state a claim upon which relief can be granted against them based on their positions as

supervisors.

### 7.  Official Capacity Monetary Damages

To the extent Plaintiff is suing any Defendant in their official capacities, the Eleventh

Amendment bars official capacity claims against state prison officials for money damages.

See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Therefore, any official capacity claims

against any Defendant for monetary relief fail as a matter of law and should be dismissed.

### 8.  Failure to Truthfully Disclose Prior Filing History

A prisoner attempting to proceed IFP in a civil action in federal court must comply with

the mandates of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134,

§§ 801-810, 110 Stat. 1321 (1996).  28 U.S.C. § 1915(g) of the PLRA provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil
> action or proceeding under this section if the prisoner has, on 3 or more prior
> occasions, while incarcerated or detained in any facility, brought an action or

appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

"This provision of the PLRA, commonly known as the three strikes provision, requires frequent filer prisoners to prepay the entire filing fee before federal courts may consider their lawsuits and appeals." Rivera v. Allin, 144 F.3d 719, 723 (11th Cir. 1998) (internal citations omitted), *abrogated on other grounds by* Jones v. Bock, 549 U.S. 199 (2007); see also Lomax v. Ortiz-Marquez, 140 S. Ct. 1721, 1726 (U.S. 2020) ("The point of the PLRA, as its terms show, was to cabin not only abusive but also simply meritless prisoner suits."). The Eleventh Circuit has upheld the constitutionality of § 1915(g) because it does not violate an inmate's right to access the courts, the doctrine of separation of powers, an inmate's right to due process of law, or an inmate's right to equal protection. Rivera, 144 F.3d at 721-27.

To that end, the "Complaint for Violation of Civil Rights (Prisoner Complaint)" requires that prisoner plaintiffs disclose:  (1) whether they have begun other lawsuits in state or federal court dealing with the same facts involved in the current action, (2) whether they have filed other lawsuits in state or federal court otherwise relating to the conditions of their imprisonment, and (3) the disposition of any such lawsuits.  (Doc. no. 15, pp. 18-19.)  The questions concerning prior lawsuits require the prisoner plaintiff to describe each such lawsuit, including the court hearing the case, and the date of filing and disposition.  (Id.)  If there is more than one such lawsuit, the additional lawsuits must be described on another piece of paper.  (Id.)

18

### a.      Plaintiff's Disclosures

Here, as certified pursuant to Federal Rule of Civil Procedure 11, Plaintiff disclosed one other case filed in the Southern District of Georgia and then in conclusory fashion stated there are "unknown other lawsuits" that cannot be identified because "of the disappearance of his legal mail." (Id. at 19.) However, Plaintiff is well-known to this Court since at least 2016 as a "prolific filer" who files case throughout the federal courts in Georgia. See Gaither v. Epps, CV 116-103, doc. no. 11, *adopted by* doc. no. 20 (S.D. Ga. Oct. 25, 2016). Indeed, in the above-captioned case, the Court cited Plaintiff's status as a three-striker and identified a 2021 case collecting several of his prior strikes. (Doc. no. 17, p. n.1 (citing Gaither v. Bryson, CV 121-001, doc. no. 6, pp. 2-3, *adopted by* doc. no. 13 (S.D. Mar. 16, 2021).) Moreover, a review of Plaintiff's filing history shows he has filed cases not only in the federal courts of Georgia, but also throughout the country. See, e.g., Gaither v. Triplett, 1:2021cv825 (N.D. Ohio Apr. 19, 2021); Gaither v. Bobbitt, 4:2019cv582 (N.D. Okla. Oct. 30, 2019). In an "amended complaint" mistakenly filed in this case rather than another currently pending case in this District,[4] Plaintiff provides the name of a case, as well as the address of the Clerk of Court in Omaha, Nebraska, where he filed another, undisclosed case; he also provides a docket sheet from a case in the Northern District of Georgia. (See doc. no. 18, p. 2 ¶ 10 and pp. 9-10.)

---

[4]The other currently pending case is Gaither v. Warden, CV 121-076 (S.D. Ga. Apr. 29, 2021). Even if Plaintiff intended to file the amended complaint in this case, it is of no effect because he did not file a motion to amend, as is required by Fed. R. Civ. P. 15 because he has already filed three amended complaints in this case. (See doc. nos. 5, 8, 15.)

### b.      Dismissal as a Sanction

The Eleventh Circuit has approved of dismissing a case based on dishonesty in a complaint.  In <u>Rivera</u>, the Court of Appeals reviewed a prisoner plaintiff's filing history for the purpose of determining whether prior cases counted as "strikes" under the PLRA and stated:

> The district court's dismissal without prejudice in <u>Parker</u> is equally, if not more, strike-worthy.  In that case, the court found that Rivera had lied under penalty of perjury about the existence of a prior lawsuit, <u>Arocho</u>.  As a sanction, the court dismissed the action without prejudice, finding that Rivera "abuse[d] the judicial process[.]"

<u>Rivera</u>, 144 F.3d at 731; <u>see also</u> <u>Strickland v. United States</u>, 739 F. App'x 587, 587-88 (11th Cir. 2018) (<i>per curiam</i>) (affirming dismissal of complaint based on failure to disclose eight habeas petitions filed in district court); <u>Sears v. Haas</u>, 509 F. App'x 935, 936 (11th Cir. 2013) (<i>per curiam</i>) (affirming dismissal of complaint where prisoner plaintiff failed to accurately disclose previous litigation); <u>Redmon v. Lake Cnty. Sheriff's Office</u>, 414 F. App'x 221, 223, 226 (11th Cir. 2011) (<i>per curiam</i>) (affirming dismissal, after directing service of process, of amended complaint raising claims that included denial of proper medical care and cruel and unusual punishment for placement in a "restraint chair" and thirty-seven days of solitary confinement upon discovering prisoner plaintiff failed to disclose one prior federal lawsuit); <u>Young v. Sec'y Fla. for Dep't of Corr.</u>, 380 F. App'x 939, 940-41 (11th Cir. 2010) (<i>per curiam</i>) (affirming dismissal of third amended complaint based on a plaintiff's failure to disclose prior cases on the court's complaint form); <u>Alexander v. Salvador</u>, No. 5:12cv15, 2012 WL 1538368

(N.D. Fla. Mar. 21, 2012) (dismissing case alleging deliberate indifference to serious medical needs where plaintiff failed to disclose new case commenced in interim between filing original complaint and second amended complaint), *adopted by*, Alexander v. Salvador, No. 5:12cv15, 2012 WL 1538336 (N.D. Fla. May 2, 2012).

The practice of dismissing a case as a sanction for providing false information about prior filing history is also well established in the Southern District of Georgia. See, e.g., Brown v. Wright, CV 111-044 (S.D. Ga. June 17, 2011); Hood v. Tompkins, CV 605-094 (S.D. Ga. Oct. 31, 2005), *aff'd*, 197 F. App'x 818 (11th Cir. 2006) (*per curiam*). Here, not only did Plaintiff fail to disclose the other currently pending case in this District, but his conclusory assertion of "unknown other lawsuits" rings hollow in light of his convenient ability to provide the name and address of a federal court in Omaha and a docket sheet from the Northern District of Georgia. Moreover, as the level of detail provided in his numerous filings show, Plaintiff has an ability to recount detailed descriptions of events and interactions with others that occurred months ago. This high level of recall is inconsistent with a conclusory assertion of "unknown other lawsuits" that does not so much as reference another currently pending lawsuit in this District, or Plaintiff's other country-wide filings. Plaintiff's failure to truthfully disclose his prior filing history was blatantly dishonest. Accordingly, even if Plaintiff had stated a claim upon which relief could be granted - which, as described in detail above, he has not - this case should be dismissed without prejudice as a sanction for the dishonesty.

## II.   CONCLUSION

Because Plaintiff fails to state a claim upon which relief can be granted and has abused the judicial process by providing dishonest information about his filing history, the Court

**REPORTS** and **RECOMMENDS** the case be dismissed without prejudice.

SO REPORTED and RECOMMENDED this 20th day of July, 2021, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

22